IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:26CR094 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| MELINDA WILLIAMS, | ) | |
| | ) | UNITED STATES' SENTENCING |
| Defendant. | ) | MEMORANDUM |

The United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Joseph H. Walsh, Assistant United States Attorney, respectfully submits this memorandum in advance of Defendant Melinda Williams' sentencing.  The United States respectfully requests that the Court adopt Probation's findings and impose a sentence at the high-end of Defendant's advisory Guidelines ranges.  The United States also recommends that the Court sentence Defendant to three years of supervised release and order her to pay restitution in the amount of $196,456.93.

## I.    OFFENSE CONDUCT

The government adopts and incorporates the summary of Defendant's offense conduct as set forth in Probation's presentence investigation report.  (R. 15: Final PSR, PageID Unavailable).  In short, after Defendant was convicted of fraud in 2007 and sentenced to 57 months' imprisonment, Defendant returned to her fraud schemes and stole over $220,000 from two employers.  To pull off her schemes, Defendant concealed her identity and lied to her prospective employers about her criminal past and professional qualifications to get finance and/or accounting jobs.  Then, once employed, she abused her positions to steal money.

At the club ("Club 1") where she worked as an accounting manager, Defendant sent unauthorized ACH transfers from club accounts to her personal accounts.  These fraudulent transfers totaled almost $10,000.  Defendant also misused club credit cards by charging personal expenses to the club without prior authorization.  In just a few months, Defendant personally benefited from over $5,500 in fraudulent credit card transactions.

In early 2022, Defendant left the club for a more lucrative job as a controller at a local company ("Company 1") where she once again stole money after lying about her background. This time, though, Defendant stole far more money.  By modifying vendor profiles in the company's systems and directing her subordinates to approve transactions, Defendant sent herself more than $180,000 through unauthorized ACH transfers.  Defendant concealed her scheme by replacing vendors' bank account information with her own personal accounts.  Once the money was in Defendant's accounts, she spent it on herself to fund an illegitimate lavish lifestyle.  For example, Defendant bought a $20,000 Wellcraft boat, a $13,000 speed boat, and a $13,000 hot tub.  She also bought season tickets to the Cleveland Cavaliers and Canton Charge. Defendant also misused the company's credit cards.  Between March and July 2022, Defendant benefited from over $31,000 in fraudulent credit card purchases.

In total, Defendant's fraud caused the club to suffer a loss of $15,286.31, and the company to suffer a loss of $213,285.31, for a total loss of $228,571.62.  The club has not recouped any of its losses.  The company was able to collect some stolen money but Defendant still owes the company $181,170.62.

## II.     SENTENCE

A well-established legal framework guides the Court's sentencing decision, and the advisory Guidelines range serves as "the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Together with the Guidelines, the Court considers the statutory factors set forth in 18 U.S.C. § 3353(a).  Ultimately, the Court's task is to impose a sentence that is "sufficient, but not greater than necessary[.]"  18 U.S.C. § 3353(a).

### A.     Sentencing Guidelines.

As reflected in the chart below, the government agrees with Probation's Guidelines calculation.  Defendant's total offense level is 15 after a three-level reduction for acceptance of responsibility.  Her criminal history category is II due to her prior fraud conviction and sentence.  The combination of OL 21 and CH II results in an advisory Guidelines range of 21-27 months' imprisonment.

| 18 U.S.C. § 1029(a)(2):  Access Device Fraud | | |
|---|---|---|
| Base offense level | 6 | § 2B1.1(a)(2) |
| Loss Amount: More than $150,000 but less than $250,000 | +10 | § 2B1.1(b)(1)(F) |
| Abuse of position of trust | +2 | § 3B1.3 |
| Total offense level before acceptance | 18 | |
| Acceptance of responsibility | -3 | § 3E1.1 |
| Total offense level after acceptance | 15 | |

### B.     The Section 3553(a) factors weigh in favor of a high-end Guidelines sentence.

With respect to the Section 3353(a) factors, the government submits that a high-end Guidelines sentence of at least 24 months' imprisonment is warranted in this case.

*Nature and Circumstances of Offense*.  Defendant's brazen fraud warrants a significant sentence.  Over a relatively short period of time, Defendant lied to two employers and stole over $220,000.  She was able to complete her fraud, in part, because she held positions of trust at each employer.  She was the accounting manager at the club, and the controller at the company.

Positions she obtained through concealing her criminal past.  Such fraudulent conduct, especially when viewed in the context of Defendant's history, warrants a high-end sentence.

*Defendant's History.*  Defendant's criminal history also supports a high-end sentence. Defendant engaged in this instant fraud after she spent years in federal prison for a similar scheme.  Even more aggravating, Defendant committed this instant fraud and lived a lavish lifestyle while owing nearly $3 million in restitution for her previous fraud.  Defendant didn't steal money to pay back her previous victims; she stole it to benefit herself and her family.

Although this is only Defendant's second criminal conviction, the criminal conduct underlying her convictions has been extensive.  The fraud in this case was not an instance of an otherwise law-abiding individual making one bad choice at one distinct moment in time; rather, Defendant devoted many months to defrauding two different companies, making affirmative choice after affirmative choice to deceive and steal from employers who trusted her.  Defendant previously spent four years defrauding another employer of approximately $1.7 million, which was the basis of her prior federal conviction.

This history shows that Defendant is an untrustworthy recidivist.  Since 2002, she has lied and cheated her way to huge sums of money, which she has used to benefit herself and her family.  Furthermore, unlike many other criminal defendants, Defendant's personal characteristics and history lack mitigating effect.  Defendant could have lived a law-abiding life after her first prison term, but she instead chose to steal more money and ignore her restitution obligations.

The Court should disregard the excuses she makes in her PSR.  Her statement that she lied and stole money because she was dealing with "emotional, financial, and personal hardship[s]" is belied by how she spent the stolen funds.  Boats, a hot tub, season tickets, and

new $40,000 Mercedes are not hardship expenses.  The Court should also consider that Defendant made similar claims of remorse in her 2007 acceptance-of-responsibility statement, in which she claimed, "I can assure the Court that nothing like this will ever happen again." Defendant has not only been convicted in this case since 2007; she has also recently been charged with yet another similar fraud scheme in state court for conduct that allegedly occurred while Defendant was under FBI investigation in this case.  Defendant was interviewed by the FBI in October 2022 in connection with this case, and her pending state fraud charges are based on conduct that allegedly occurred between October 2025 and January 2026.

*Need for Sentence.*  A high-end prison term is also warranted when considering the need for a sentence in this case.  Such a sentence would protect the public from further crimes of Defendant, and it would properly reflect the seriousness of Defendant's ongoing criminal conduct.  A high-end prison term would also provide just punishment, promote the rule of law, and levy necessary specific and general deterrence.  The Court's sentence should convey to Defendant that her criminal activity must cease, and that she must take steps in prison to rehabilitate herself.  On a general level, the Court's sentence should inform others that fraud will not be tolerated, especially when it's not a first-time offense.

*Sentencing Disparities*.  The government's recommendation should not create any unwarranted sentencing disparities.  Although a high-end sentence is slightly above the median and average sentences for like defendants, Defendant is in a different position given her history. Probation noted that Defendant's history could warrant an upward variance.  The government's view is that a high-end sentence is sufficient, but not greater than necessary.

5

## III.    RESITUTION

In addition to a sentence of imprisonment and supervised release, Defendant should also be ordered to pay restitution.  Under the Guidelines, restitution shall be ordered in this case, and the parties have agreed that Defendant is obligated to make full restitution.  Specifically, the Defendant should be ordered to make restitution in the amount of $196,456.93, comprising $15,286.31 to Club 1 and $181,170.62 to Company 1.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    */s/ Joseph H. Walsh*
Joseph H. Walsh (OH: 0095822)
Assistant United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3833
Joseph.Walsh@usdoj.gov

6