**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.  1:26-cr-00094** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SOLOMON OLIVER, JR.** |
| | ) | |
| -vs.- | ) | |
| | ) | **POSITION OF THE DEFENDANT** |
| **MELINDA WILLIAMS,** | ) | **WITH RESPECT TO SENTENCING** |
| | ) | **FACTORS** |
| **Defendant.** | ) | |

Defendant Melinda Williams, by and through counsel, respectfully submits this Position with Respect to Sentencing Factors to assist this Honorable Court in imposing a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Ms. Williams will appear before this Court for sentencing on June 30, 2026, following her guilty plea via an Information to two counts of Access Device Fraud in violation of 18 U.S.C. §§1029(a)(2) and 1029(c)(1)(A)(i). PSR ¶1-2. As set forth herein, Ms. Williams respectfully requests that this Court impose a sentence of 18 months. While below the guidelines range, this sentence is in alignment with the average sentence of similarly-situated defendants, and a higher sentence is greater than necessary to comport with the purposes of sentencing.

Respectfully submitted,

/s/ Robert B. Botnick
**ROBERT B. BOTNICK**
**SC0078267**
**THE BOTNICK LAW FIRM, LLC**
**Attorney for Defendant**
20600 Chagrin Boulevard, Suite 1100
Shaker Heights, Ohio 44122
(216) 245-9245
(216) 331-2619 – Fax
robert@botnicklawfirm.com

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      <u>FACTUAL HISTORY</u>**

On February 26, 2026, Ms. Williams was named in a two-count Information charging her with the offense of Access Device Fraud. PSR ¶1. Ms. Williams entered a plea to the information on April 1, 2026. PSR ¶ 2. The parties did not enter an agreement on the sentencing range to be used or sentence to be imposed. PSR ¶2.

The record reflects that Ms. Williams improperly used one or more unauthorized access devices during her employment with two separate entities – a Club and a Company – during the time period of March 20, 2022, to July 7, 2022. PSR ¶6-20.

As part of the plea agreement, Ms. Williams agrees to make full restitution for the losses caused by her conduct in this case and has jointly agreed with the government to a restitution order in the amount of $196,456.93. PSR ¶4. This total represents the losses to the Club of $15,286.31 and the Company of $181,170.62. PSR ¶4.

The parties did not enter any agreement about sentencing range, other than to stipulate to the computation of the advisory Sentencing Guideline offense level, which is a total offense level of 15 after consideration for exacerbating and mitigating factors. See, Plea Agreement ¶14, 17.

Ms. Williams has accepted responsibility for her actions and provided a statement acknowledging the harm caused and expressing her regret and remorse over her actions. PSR ¶ 23.

**II.     <u>AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING SET FORTH IN 18 U.S.C. §3553(a).</u>**

In light of *United States v. Booker,* 543 U.S. 220 (2005), this Honorable Court is required to engage in a multi-step analytical process at sentencing. First, the Court must determine, after making appropriate findings of fact, the applicable Guidelines range. *United States v. Grossman*,

513 F.3d 592, 595 (6th Cir. 2008). After making appropriate findings of fact, the Court must determine whether a sentence within that range serves the factors set forth in § 3553(a). *Id*. Finally, the Court must articulate the reasons for the sentence imposed in light of the factors set forth in § 3553(a). *Id*.

In the instant case, the parties have agreed on the Sentencing Guidelines calculation as follows:

| Base Offense Level | 6 | §2B1/1(a)(2) |
|---|---|---|
| Loss Amount: More than $150,000 but less than $250,000 | +10 | §2B1.1(b)(1)(F) |
| Abuse of Position of Trust | +2 | §2B1.3 |
| **Acceptance of Responsibility** | **-3** | **§3E1.1(a) and (b)** |
| **Total Offense Level** | **15** | |

The pre-sentence investigation further determined that Ms. Williams has a criminal history category of II. PSR¶40-41.

According to JSIN, in the last 5 years[1] there were 57 defendants whose primary guideline was §2B1.1 with a Final Offense Level of 15 and a Criminal History Category of II. Of the 45 defendants who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 18 months and the median length of imprisonment imposed was 21 months.

While the Court must begin with the Guidelines, they are advisory only. The ultimate sentence must be "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a). Here, a sentence below the low end of the guideline range, in alignment with the average sentence length, is sufficient to satisfy the statutory purposes of sentencing.

Broad statutory factors in 18 U.S.C. § 3553(a) imbue the sentencing courts with discretion

---

[1] After excluding defendants who received a §5K1.1 substantial assistance departure.

to consider the unique "nature and circumstances of the offense" and the "history and characteristics of the defendant" in deviating from the Sentencing Guidelines. This gives judges the discretion to tailor sentences to the unique facts of each case. Ms. Williams' matter is no different, and she asks that the Court consider the factors unique to her, her conduct in this matter, and her family in considering her ultimate sentence.

### 1. Ms. Williams' Unique Characteristics and the Good She Brings to the World

It can be easy to become mired in the facts of a specific case, with the black and white evidence lacking the color, shape, and nuance of context. The Government demands a punishment far outside the average and well above the median sentence for others in the same position. In doing so, the Government draws connections to Ms. Williams' prior case 20 years ago, blending them as if they are the same conduct with no history or life between. Certainly, Ms. Williams erred in her past and she was punished. She, in fact, continues to be punished in her restitution, which she owes jointly and severally with her co-defendant in that prior case, who also happens to be her abusive ex-spouse. The Government glosses over the nearly 20 years between her actions, which contain no allegations of similar conduct whatsoever. Over the course of two decades she lived a significant amount of life, held meaningful jobs, raised her children, and planned for the future.

Her conduct here, for which she is extremely remorseful, was not done in a vacuum. As a result, her punishment should also not be decided in a vacuum. Ms. Williams gave significant value to the victims as an employee and acted at times in a manner that she though was approved or, at the very least, accepted. She clearly crossed lines in her behavior and has taken responsibility for herself by pleading guilty. She is prepared for the sentence that awaits her and asks that the Court not only look at her conduct here - or any unproven allegations made against her - but at the context of her whole person and what positive attributes she offers others. Her conduct was selfish

4

here, but as the Court can glean from the words of those who know her, she is anything but a selfish as a person.

Like all people, Ms. Williams' personality and behavior have been, in part, shaped by her life story and personal challenges. Her life history, devastating personal losses, tumultuous home life circumstances, frightening cancer journey, and serious family financial stressors have brought her to where she is today. She accepts responsibility for her failings and asks the Court to consider context and nuance in deciding her sentence. Furthermore, Ms. Williams asks the Court to consider the knowledge and understanding of those closest to her in determining whether she is deserving of a sentence that is significantly out of alignment with the average and median amounts of time ordered for others in her position.

Ms. Williams' was raised by her parents in Garrettsville, OH. PSR ¶47-52. Her mother was abusive and volatile and would physically and emotionally abuse Ms. Williams and her siblings. PSR ¶50. Though much of the abuse was leveled by her mother, she was also hit by her father at her mother's direction. PSR ¶50. She ran away from home before graduating high school, lived in her car for a period, and traveled around the United States and Canada. PSR ¶52. In 1990 she married young and, as often happens with abused children, married an abusive man. PSR ¶54-56. After many tumultuous years and the birth of five children, three of whom died shortly after being born, she and her former husband separated in 2006, the same year as her first Federal case. PSR ¶38, 56. The loss of her children was devastating and caused her significant mental health distress. PSR ¶69.

Ms. Williams has suffered mental health issues over the years; she received counseling for battered wife syndrome beginning in 2006 and was diagnosed with personality disorder in 2012.

PSR ¶66-67. There are no current mental health assessments or records, but Ms. Williams also believes she may suffer from obsessive compulsive disorder. PSR ¶68.

Ms. Williams has also had an abundance of physical health challenges in her adult life, including thyroid disease, a heart attack and stroke, and thyroid cancer that required physically grueling and financially overwhelming treatment and care. PSR ¶61-65.

On top of these issues, Melinda suffered a devastating financial blow when her son was involved in an automobile accident while at school in Arizona, and was later sued. PSR ¶60.

Despite everything, Ms. Williams has been able to cultivate long-term friendships with others that ring with a common theme – Ms. Williams is an incredibly caring, dependable, and giving person. Sixteen letters of support are attached for the Court's review as Exhibit A, and while they are not fully reiterated herein, the following summaries represent the overall theme of each:

**April Tylek (daughter)** – her mom is the heart of the family and has always put her



children and family before herself. She worked tirelessly on third shift to provide an education for her children and is the reason that April chose to seek a career in the medical field. They are best friends and losing the ability to speak with her daily will leave an impossible hole in her life. She brings everyone together and is a caring, loving, and selfless woman at her core.

**Brian Smith (longtime friend)** – Melinda has shown tremendous personal growth in the past 20 years, overcoming major obstacles while remaining committed to helping those around

6

her. She has always been someone others can depend on and will go out of her way to support family and friends both emotionally and financially.

**Gwynn Becker (former University Hospitals co-worker)** – she had the privilege of working with Melinda for over a decade and was her supervisor. Melinda is an exceptional leader, an incredible mother, and a genuinely compassionate person. Melinda has devoted her life to her family and children.

**Hailey Terrell (family friend)** – Hailey has undergone more than 106 surgeries in her short life of 15 years, and Melinda has been there to support her and serve as her rock each step of the way. Melinda supported her during hospital stays, recoveries, and moments when she just felt scared or overwhelmed. She doesn't know how she'll be able to handle her upcoming surgeries without Melinda by her side.

**Jessica Terrell (family friend and Hailey's mother)** – she has known Melinda for more than 13 years and knows her to be a compassionate and selfless person who consistently puts the needs of others before her own. Melinda has provided both emotional and financial support, organizing fundraisers to support medical costs and paying for things without any expectation of a return. Melinda has overcome challenges and continued to be a source of care for others despite hardships of her own.

**Jay Mahnke (future son-in-law)** – she has brought love and stability to his life, and from the moment they met she treated him as one of her own. She exudes grace and compassion, doting on his elderly grandmother and always making it a point to welcome and include his family. She is generous and thoughtful and shows warmth, compassion, love, and complete selflessness to others.

**Jeffrey Gilbert (Pastor, St. Mary Church)** – it has been a blessing to walk alongside

Melinda for the last 8 years through the parish soup kitchen, outreach ministries, and numerous charity events in their church community. He has witnessed firsthand Melinda's unwavering compassion and generosity, dedicating countless volunteer hours to help others in need and never asking for recognition or praise. Melinda has touched countless lives through her good.

**Jennifer Lindsey (lifelong friend)** – Melinda is one of those people who consistently shows up for others, offering help, encouragement, and care even when she may be dealing with her own personal struggles. She naturally puts others before herself, making her a person others turn to in difficult moments as a dependable, caring, and genuinely concerned person. Her lost will be deeply felt and a significant loss to others.

**Jennifer Worsham (friend)** – Melinda has faced an extraordinary number of life challenges, including serious health battles such as cancer as well as a heart attack and stroke. They were life altering medical issues that were later compounded by the accident involving her son. Melinda has not had an easy life, and her hardships have taken their toll, yet she remains a strong and caring presence for those around her.



**Justin Williams (husband)** – Melinda is an extraordinary person whose life is defined by her compassion, integrity, and dedication to her family. She is someone who consistently places the needs of others ahead of her own. He has watched as she has paid for purchases for elderly individuals at stores when they could not afford necessities, assists neighbors who are no longer physically capable of

managing daily tasks independently. Her actions are rooted in concerns for others and their wellbeing.

**Koty Tylek (son)** – his mom has always pushed herself to provide for him, including private school. She always wanted her kids to have everything she never had. Her kindness has applied to everyone, no matter who they are or what they look like. She does so much for her family and is incredibly caring, hardworking, and selfless.

**Steve Erb (friend)** – what has always stood out about Melinda is her generosity and compassion toward complete strangers. He has watched her pay for groceries for people who did not have enough money, without hesitation and without wanting recognition. In a world where many people look the other way, Melinda chooses kindness, generosity, and empathy.

**Tina Smiling (longtime friend)** – she has known Melinda for more than 20 years. Despite facing personal hardships, Melinda has remained determined to improve herself, maintain stability, and help others whenever possible.

**Tinie Hinton (friend)** – they have seen the emotional and physical toll that physical abuse from her former husband took on her, but has also seen her determination to create a different life for herself and her family. Malinda loves her children in a way she did not have, and has acted to break the cycle by providing love, attention, and emotional support. Her life has not always been easy, but she is someone who shaped her into someone who values family, kindness, and perseverance.

**Tor Davis (lifelong friend)** – she has known Melinda for more than 50 years and witnessed her younger years firsthand. Melinda did not grow up in a loving or stable home and lacked the kind of support and guidance each child deserves. As an adult, Melinda endured an abusive marriage with an alcoholic husband who treated her terribly and used her as a physical and

9

emotional punching bag. But her children are the center of her world and she has sacrificed endlessly to protect them. Melinda is loving, selfless and devoted to her family.

**2    Need for sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.**

This was a serious offense and the range of prison time under which Ms. Williams will be sentenced reflects the seriousness of her conduct. However, a sentence below the guideline range, but average for JSIN data, will be a significant punishment. For a mother of three with a new grandchild born this year, even the average 18-month prison term is a profound deprivation through separation from her family and reflects her conduct's seriousness. Even the median sentence under JSIN is the lowest end of the Guidelines range at 21 months. General deterrence doesn't require a sentence at or above the low end. The lengthy separation from family and society, for even the average sentence period for similarly situated defendants, is likely to deter Ms. Williams.

Ms. Williams is not a danger to the public, as evidenced by her extremely limited criminal history. Any small risk of future conduct is mitigated by the reality that, following her release, it is extremely unlikely that she will ever again be afforded access or the opportunity to reoffend, considering that she will likely not be a viable candidate for similar jobs in the future. Furthermore, the sooner Ms. Williams can return home, the sooner she can resume employment in furtherance of her obligations of restitution.

## III.    DESIGNATION REQUEST

Pursuant to 18 U.S.C. § 3621, when deciding on the place of imprisonment for a convicted individual, the Bureau of Prisons may consider "any statement by the court that imposed the sentence." Because this Honorable Court stands in the best position to consider the history and

10

circumstances of this case, Ms. Williams respectfully moves this Court to recommend to the Bureau of Prisons that she be designated to the federal correctional facility located in Alderson, WV. She seeks placement at FPC Alderson, as it is a minimum-security facility located in reasonable proximity to her home and family.

## IV. CONCLUSION

At the time of sentencing, this Honorable Court is tasked with imposing a sentence that is not merely reasonable, but one that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). That directive requires more than a mechanical application of the Guidelines; it requires an individualized assessment of the person standing before the Court.

Here, that individualized assessment compels a finding of an offense level of 15, a criminal history category of II, and a sentence below the low end of the guidelines range, to comport with the average sentence of 18 months received by other similarly situated offenders.

A sentence below the guidelines range will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment. It will also serve the goals of deterrence and protection of the public. A longer sentence, by contrast, would do little more to further these goals. In this instance, more time would simply be more time, and would ultimately result in a sentence greater than necessary to achieve the purposes of sentencing, as well as create disparity in sentencing when compared to other similar offenders.

For all of these reasons, Ms. Williams respectfully requests that this Honorable Court impose a sentence below the advisory Guidelines range in step with data presented by JSIN.

Such a sentence is not an act of leniency; it is a thoughtful and appropriate application of justice grounded in the facts of this case and the principles of § 3553(a).

11

Respectfully submitted,


*/s/ Robert B. Botnick*
**ROBERT B. BOTNICK**
**SC0078267**
**THE BOTNICK LAW FIRM, LLC**
**Attorney for Defendant**
20600 Chagrin Boulevard, Suite 1100
Shaker Heights, Ohio 44122
(216) 245-9245
(216) 331-2619 – Fax
robert@botnicklawfirm.com


## CERTIFICATE OF SERVICE

A copy of the foregoing Position of the Defendant with Respect to Sentencing Factors was electronically filed this 26th day of June 2026 and a copy thereof served upon the parties by the Court's electronic case filing system.


*/s/ Robert B. Botnick*
**ROBERT B. BOTNICK**
**SC0078267**
Attorney for Defendant

12